## UNITED STATES v. ARMOUR & CO. OF DELAWARE (two cases).

## SAME v. ARMOUR & CO. OF DELAWARE et al.

### Nos. 16084–16086.

District Court, D. Massachusetts.

May 4, 1943.

Frederick E. Jennings and Robert W. Meserve, both of Boston, Mass., for defendant.

Edmund J. Brandon, U. S. Atty., of Boston, Mass., and Joseph J. Gottlieb, Asst. U. S. Atty., of Boston, Mass., for plaintiff.

HEALEY, District Judge.

Three indictments have been returned against the defendants in these cases. Two of the indictments (Criminal Nos. 16084 and 16086) are for violations by the defendant, Armour & Company of Delaware, of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq. The third indictment (Criminal No. 16085) was returned against Armour & Company of Delaware and others alleging conspiracy to violate the Emergency Price Control Act of 1942. To these indictments the defendants have filed demurrers and motions to quash. The indictments against the corporate defendant alone allege in substance that the defendant violated Section 4(a) of the Emergency Price Control Act of 1942 by selling and delivering butter at prices in excess of the maximum price established by Maximum Price Regulation No. 280, while in effect, and then at prices in excess of the maximum price established by Maximum Price Regulation No. 289, superseding Regulation No. 280, by evading the price limitations contained therein by scheme, trick and device; namely, by conditioning the sale of the butter sold in the ordinary course of trade and business on the sale of another commodity, and selling the butter and other commodity at a price in excess of the established maximum price for butter. The conspiracy indictment alleges conspiracy so to violate the Act.

The demurrers and motions to quash raise practically the same objections, only three of which have not already been substantially disposed of in other cases in this District:

1. That there could be no conspiracy to violate two regulations which were not in force at the same time.

2. That an indictment will not lie for a violation of Regulation 280, since it was superseded by Regulation 289 prior to the return of the indictment.

3. That the mere conditioning of the purchase of butter on the purchase of eggs, and the sale of the butter and eggs at a price higher than the maximum price established for butter, is not a violation of the Act nor of the regulations.

The first objection offers little difficulty. The short answer is that but one conspiracy is alleged; namely, a conspiracy to violate the Act by selling at prices higher than those established by Maximum Price Regulation 280 while in effect and at prices higher than those established by Maximum Price Regulation 289 when the latter regulation superseded Regulation 280. In oth-

er words, the conspiracy alleged was a single conspiracy to violate the Act itself.

In support of the second objection, the defendants rely on the case of United States v. Hark et al., D.C., 49 F. Supp. 95, 97, decided in this District on March 5, 1943. It was there held that an indictment would not lie for the violation of a regulation which had been expressly "revoked" by a subsequent regulation. Of course, a revocation is in effect a repeal, and was so treated by the Court in that case. Judge Sweeney in the Hark case based his decision on the common law rule that on "the repeal of an act without any reservation of its penalties, all criminal proceedings taken under it fell." He pointed out that the "basis of this rule was a presumption that the repeal was intended as a legislative pardon for past acts," citing 22 C.J.S., Criminal Law, § 27 b 4. However, in the instant case, Regulation 289 does not "revoke" or "repeal" Regulation No. 280, but merely supersedes the provisions of Maximum Price Regulation No. 280. See Maximum Price Regulation 289, § 1351.1510. The provisions of Regulation 289, insofar as here applicable, are substantially the same as the provisions of Regulation 280 which it superseded. Consequently, there plainly could be no presumption that the repeal was intended as a pardon. This is clearly indicated in 22 C.J.S., Criminal Law, on which Judge Sweeny relied, in § 26. It is there provided that "an amendatory statute which simply defines the same offense in substantially the same language as that used in the statute amended does not take away the right of prosecution under the amended statute; the new statute is simply to be regarded as a continuation of the old." The reason for this rule is obvious. Where substantially the same language is used in the amending statute, no legislative pardon can be presumed. By the same token, a superseding regulation in substantially the same language as the language in the superseded regulation must be considered as a continuation of the old regulation, and not a repeal or revocation carrying a general pardon for violations of the old regulation.

The third objection poses a more difficult problem. The indictments in effect allege that the defendants sold (or conspired to sell) butter and "as a condition of the sale of said butter, the defendants did unlawfully, knowingly and wilfully demand, require and compel" (or conspired so to do) the purchasers to buy another commodity, and that the total price for the butter and the other commodity exceeded the maximum price established for butter. The government contends that such a scheme is an evasion within the meaning of Section 1351.809 of Regulation 280 and Section 1351.1506 of Regulation 289. Those sections in effect provide that the established price limitations shall not be evaded, whether by direct or indirect methods, by tying-agreements. The indictments allege compulsion to purchase the tied-in agreements with the butter. In other words, the purchaser, in order to obtain butter, must purchase another commodity whether or not he wants such other commodity, or has any use for it. The other commodity may be useless, and hence worthless to him. Consequently, the amount which he pays for the tied-in commodity would, in effect, be paid in order to obtain the butter. The result is that he is in fact paying a price higher than the established price for the butter. In my opinion, the Administrator intended, by the sections referred to above forbidding evasion, to prevent this type or similar types, of schemes. If the defendants and others are allowed to evade the Act by this type of agreement, the purpose of the Act to stabilize prices and thus to prevent inflation would be circumvented. If a dealer controlled a scarce commodity, he would be able by means of such a tying agreement to unload a plentiful and unwanted commodity on the market. The result would be a severe blow to the whole structure built up to prevent such practices, and their resultant evils. It is, therefore, my opinion that a tying-agreement, by which a seller "demands, requires and compels" the purchase of one commodity as a condition of the sale of another product for which a ceiling price has been established, and by which the seller demands a total price for both above the price established for the commodity regulated, is an evasion within the meaning of the regulations. It follows that indictments allege facts constituting a crime.

The demurrers are overruled and the motions to quash are denied.