### ZIMBERG et al. v. UNITED STATES.

#### No. 3909.

Circuit Court of Appeals, First Circuit.

April 24, 1944.

John I. Robinson, of Springfield, Mass., and Thomas H. Mahony, of Boston, Mass., for appellants.

Joseph J. Gottlieb, Asst. U. S. Atty., Edmund J. Brandon, U. S. Atty., Robert L. Wright, Sp. Asst. to the Atty. Gen., and F. J. Hansberry, State Enforcement Atty., Office of Price Administration, all of Boston, Mass., for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is a consolidated appeal from judgments sentencing the defendants to fines and imprisonment after they had been found guilty by a jury of violating § 4(a) of the Emergency Price Control Act of 1942, 56 Stat. 28, 50 U.S.C.A.Appendix, § 904(a), by making sales of beef at prices in excess of those prescribed by Revised Maximum Price Regulation No. 169.

It appears that on the dates of the violations alleged in the indictment the de-

134

fendants as co-partners were engaged in the wholesale meat business in Springfield, Massachusetts, under the name of Hampden Beef Company, and that they were also officers, directors and holders of a majority of the stock of Big Four, Inc., a corporation which had concessions for the retail sale of meats in two stores, one located in Pittsfield and the other in North Adams, Massachusetts. On March 15, 1943, the grand jury returned an indictment in ten counts against the defendants charging that, as co-partners during January, 1943, they had made ten separate sales of beef at above ceiling prices, four to one Jules Biron, one to a certain Hilaire Roy, one to a certain Richard A. Omar and four to Big Four, Inc. Upon arraignment the defendants pleaded not guilty. During the trial that followed the court directed the jury to return verdicts of not guilty as to the defendant Goldberg on all counts except 2 and 4, and verdicts of not guilty as to the defendant Zimberg on all counts except 2, 4, 5, 8, 9, and 10. The jury found Goldberg guilty as charged in counts 2 and 4, and Zimberg not guilty as charged in those counts but guilty as charged in counts 5, 8, 9, and 10. The defendants thereupon took this appeal to us.

■ Both defendants here advance the same constitutional arguments advanced by the defendants in Rottenberg v. United States and Yakus v. United States, 1 Cir., 137 F.2d 850, decided by this court on August 23, 1943. Since we considered and rejected these arguments in the above cited cases and our decision therein was affirmed by the Supreme Court on March 27, there is no need for us to consider them again.

■ Both defendants also contend that there are variances between the allegations made in the counts before us and the proofs offered in support thereof. The variances pointed out, however, are minor. They are not of a character which could have operated either to mislead the defendants to their prejudice at the trial or to deprive them of their respective rights to be protected against subsequent prosecutions for the same offenses. Since we cannot see that the variances pointed out could in any way have affected substantial rights of the defendants, it follows from § 269 of the Judicial Code[1], 28 U.S.C.A. § 391, that these contentions are without merit. Berger v. United States, 295 U.S. 78, 81–84, 55 S.Ct. 629, 79 L.Ed. 1314.

We turn now to the counts upon which the defendant Goldberg was found guilty, but the defendant Zimberg was not, numbers two and four.

In count two the defendants are charged with having made a sale on or about January 5, 1943, at Springfield, to Jules Biron of one hindquarter of beef of good grade, weighing 156 pounds for $46.46, and in count 4 with having made a sale on or about January 13, 1943, at the same place and to the same purchaser of hindquarters of beef of the same grade weighing 637 pounds for $191. That is to say, by computation the counts allege sales at approximately 30 cents a pound.

The defendant Goldberg admits that the ceiling price fixed for beef of the above description during January, 1943, by Revised Maximum Price Reg. No. 169 was $25\frac{1}{4}$ cents per pound, and he also admits that sales of beef of good grade were made by the Hampden Beef Company to Biron on the dates and for the total prices alleged. But he contends that the evidence is not sufficient to warrant the conclusion that the sales were made at above ceiling prices. He says that the only competent evidence is that the beef sold to Biron on the dates in question weighed 184 pounds and 764 pounds respectively, weights which if divided into the alleged and admitted total price paid would make the price per pound within the established ceiling.

Biron was the only witness offered by the government to prove the allegations made in these counts. Through him customers' copies of invoices were put in evidence showing two sales by the Hampden Beef Company to him; one on January 5, 1943, of "Hind" weighing 184 pounds at $25\frac{1}{4}$ cents per pound, total $46.46, and another on January 13, 1943, of "Hind" weighing 764 pounds at 25 cents per pound, total $191. These invoices on their faces support the defendants' contention as to weights and in consequence shows sales at or just below the ceiling price, but the government contends that in each invoice

[1] "On the hearing of any appeal, certiorari, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

the weight was overstated so that, the total price paid in each instance being admitted, there were in fact overpayments of price per pound. In support of its contention it relies upon the testimony of Biron who said that between Christmas 1942, and New Year's Day following, he was told by the defendants that thereafter he would be charged 30 cents per pound for hinds of the quality described in the invoices and that, regardless of what the invoices showed, that was in fact the price which he had paid for the hinds sold to him on January 5 and 13. The defendant Goldberg contends that since Biron admitted that he had not himself weighed the beef purchased on the above dates, or seen it weighed, his testimony as to price per pound, which was objected to, should have been excluded on the ground that it was merely the statement of a conclusion drawn by the witness, not the statement of a fact. We do not agree.

■ Ordinarily in the interest of accuracy a lay witness' testimony should be confined to statements of concrete facts within his own observation, knowledge and recollection, that is, to facts perceived by the use of his own senses as distinguished from his opinions, inferences, impressions or conclusions drawn from such facts. However, as Judge Learned Hand pointed out in Central R. Co. of New Jersey v. Monahan, 2 Cir., 11 F.2d 212, 214, "The line between opinion [in the sense of an inference or conclusion from basic data] and fact is at best only one of degree, and ought to depend solely upon practical considerations, as, for example, the saving of time and the mentality of the witness. It is hardly ever reversible error to admit such evidence; its foundation may generally be as conveniently left to cross-examination. Every judge of experience in the trial of causes has again and again seen the whole story garbled, because of insistence upon a form with which the witness cannot comply, since, like most men, he is unaware of the extent to which inference enters into his perceptions. He is telling the 'facts' in the only way that he knows how, and the result of nagging and checking him is often to choke him altogether, which is, indeed, usually its purpose." The best solution suggested seems to be that the question of how far, short of guess or surmise, a witness may go in stating his conclusions is for the practical discretion of the trial court. See United States v. Cot-

ter, 2 Cir., 60 F.2d 689, 693, 694; 20 Am. Jur., Evidence §§ 763–774, Am.Law Inst., Model Code of Evidence, § 401. Often the best solution is to do what the court below did here, that is, permit the witness to state the fact as he believes it to be, leaving the validity of the grounds upon which he rests his belief to the test of cross-examination. Here it appears that the witness had never weighed the beef which he had bought or seen it weighed. This weakens his conclusion as to the price per pound that he paid for it, but it does not destroy his conclusion altogether because it appeared that he was a market man of seventeen years' experience who, presumably, would be able to tell within a very few pounds how much the beef weighed without actually putting it on the scales. We are of the opinion that the court below acted within the bounds of discretion in admitting Biron's testimony and that it is sufficient to support the verdict of guilty returned by the jury against Goldberg on the counts under consideration.

■ The defendant Goldberg next contends that he should have a new trial on these counts for the reason that the jury by finding him guilty as charged therein, but his partner Zimberg not, returned inconsistent verdicts. The answer to this contention is that the evidence with respect to the participation of the partners in the transactions with Biron on January 5 and 13 is not the same. Biron, as already appears, testified that he talked with both partners between Christmas 1942, and the new year concerning the price which would be charged him thereafter for beef and that both told him that the price would be 30 cents a pound. The partners, however, when they took the stand in their own defense, did not tell the same story. Zimberg denied having talked with Biron at all, while Goldberg admitted having talked with Biron but said that he had told him that they could not remain in business unless they could charge 30 cents a pound for beef, and, since they could not legally do that, they were going out of business for the duration of the war. Obviously the jury could have believed Zimberg in toto, but believed Goldberg only to the extent that he said he had talked with Biron, believing Biron as to what that conversation was. Thus there is a logical explanation of the verdicts on these counts and it follows that they are not inconsistent as a matter of law.

Goldberg next asserts that the court below committed reversible error when it neglected to instruct the jury to disregard certain testimony of Biron which in the jury's absence from the court room had been ordered stricken from the record. This is what occurred at the trial. The Assistant United States Attorney in his opening statement to the jury said that he would offer evidence that the defendants had violated the price regulation "by the scheme, method and practice of selling wholesale cuts of meat and placing a price on an invoice which appeared to be a price within the ceiling, and then change the weight so that a higher weight would be placed on the invoice, which in effect would mean that the purchaser was paying approximately 30 cents a pound for cuts of meat." He then put Biron on the stand as his first witness and after eliciting, as appears above, that Biron had actually paid 30 cents per pound for the beef, regardless of what the invoice showed, he asked: "During the conversations that you had with Zimberg and Goldberg, sometime between Christmas and New Year's of last year, did Zimberg and Goldberg, or either of them, talk to you about the manner in which they would make up the invoices for you?" Biron answered this question in the negative, and then he was asked, "Did Zimberg and Goldberg discuss the weight of the merchandise that you bought or would buy, with you?" and he answered "No." Next Biron was asked if he had ever weighed the beef or seen it weighed, and he said that he had not. The court then took a hand in the examination of the witness, pressing him on the latter point, but the witness doggedly maintained that he had purchased the beef in ignorance of its weight. The court then, addressing the Assistant United States Attorney, said: "I am sufficiently persuaded of the matter we discussed at the bench to allow you to go ahead along the lines you suggested." Thereupon counsel for the government, over the defendants' objection, confronted Biron with a statement which he had given to two investigators from the Office of Price Administration. As a result of cross examination based on this statement Biron reluctantly admitted that he had told the investigators that he had made an arrangement with the defendants whereby the weights would be overstated so that the price per pound would actually be about 30 cents but the invoices would show sales at or below the ceiling price.

It is evident from the foregoing, and even more evident from reading the typewritten transcript of the testimony, that the court below in its discretion permitted the Assistant United States Attorney to cross examine his own witness on the ground of the witness' hostility. This is a matter within the discretion of the court below and there being no evidence of any abuse of discretion, its ruling is not reviewable here. So far, however, the witness' statement to the investigators being unsworn and not given in court, only affects his credibility. But Biron went further, and on the stand in court and under oath twice said that what he had told the investigators was true. As a result the jury had before it two conflicting statements by Biron of equal force as evidence; one made on direct examination to the effect that there had been no arrangement whereby the weights of his purchases were to be overstated and another on cross examination that such an arrangement had been made. Under these circumstances the jury were at liberty to take either version as correct. That is to say, they could believe either that there had or had not been an agreement between Biron and the defendants to exaggerate weights. So far no error appears in the rulings of the court below.

In the absence of the jury, however, at the close of all the evidence, counsel for the defendants moved to strike the evidence of Biron's statement to the investigators on the ground that it had not been made in the defendants' presence. The court below granted the motion, but in charging the jury neglected to state that this evidence had been stricken.

The evidence stricken but not withdrawn from the consideration of the jury was of a prior contradictory statement. It was properly admitted to impeach Biron's credibility, and that the contradictory statement was not made in the defendants' presence is of no consequence. There is no rule requiring that such a statement be made in the presence of any particular person. It is equally effective to impeach no matter to whom it was made and the situation is not altered by Biron's admission that what he had told the investigators was true. This affirmation of the truth of what he had told the investigators

was made in open court. It is direct evidence in the case of equal force with any other properly admitted evidence. As the record stands it is as though Biron had testified to the scheme for evading prices by raising weights in the first place instead of reluctantly on cross examination. The error then was in granting the defendants' motion to strike, not in leaving the evidence erroneously stricken in the case for the jury to consider. The jury therefore had no improper evidence before it and from this it follows that the defendant was not legally prejudiced by the failure of the court to inform the jury that the evidence had been stricken. That failure on the part of the court below only cancelled out a ruling to which the defendant was not entitled.

We turn now to the counts upon which the defendant Zimberg was found guilty, but Goldberg by direction of the court was not, counts 5, 8, 9, and 10.

The defendant's allegations of error with respect to count 5 are so wholly lacking in merit that we need not discuss them at all. It suffices to say that they have been considered and rejected.

■ Counts 8, 9, and 10 allege transactions on January 16, 21, and 26, 1943, with Big Four, Inc. To prove the illegality of the transactions alleged in counts 8 and 9, the government put the managers of Big Four's concessions on the stand and through them, over the defendant's objection, introduced into evidence pages from certain ledgers which the managers had kept. It appears that these ledgers were purchased by the managers with Big Four funds; that they were regularly kept over a period of years; that they showed the transactions alleged to be illegal and the illegality of those transactions; and that all transactions, including those here in issue, were entered therein promptly. The defendant Zimberg contends that they should not have been allowed to go into evidence because it does not appear that these managers' ledgers were part of Big Four's bookkeeping system but were only kept by the managers for their own convenience. This contention must be rejected. There is no basis in the evidence for the conclusion that the records were only private memoranda. It clearly appears that they were a part, although probably only a minor part, of a regular system of keeping records and that they were

regularly kept for the business, not for the idle amusement or private information of the managers. They were clearly admissible under 28 U.S.C.A. § 695 which provides:

"In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of said act, transaction, occurrence, or event, if it shall appear that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term 'business' shall include business, profession, occupation, and calling of every kind."

■ The evidence with respect to Zimberg's guilt as charged in counts 8, 9 and 10 is conflicting. To recite it all is not warranted. It suffices to say that the ledger sheets mentioned above, invoices showing erasures and insertions in pencil, and oral testimony which need not be detailed, point to Zimberg's guilt as charged in these counts. There is conflicting evidence, to be sure, but in spite of it a study of the record convinces us that the verdict of the jury on these counts is supported by substantial evidence.

But one more point requires discussion.

■ Both defendants contend that the court below in its charge erred in defining the word "wilfully" as used in the section of the statute under which they were convicted. They say that the word means "malevolently," not merely "knowingly" and "deliberately" as the court below charged the jury.

In some statutes the word "wilfully" may have the meaning contended for by counsel for the defendants, but it does not have that meaning in all statutes. It "is a word of many meanings" depending upon the context in which it is used. Spies v. United States, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418. "In statutes denouncing offenses involving turpitude,

'willfully' is generally used to mean with evil purpose, criminal intent or the like. But in those denouncing acts not in themselves wrong, the word is often used without any such implication. Our opinion in United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381, shows that it often denotes that which is 'intentional, or knowing, or voluntary, as distinguished from accidental,' and that it is employed to characterize 'conduct marked by careless disregard whether or not one has the right so to act.'" United States v. Illinois Cent. R. Co., 303 U.S. 239, 242, 58 S.Ct. 533, 535, 82 L.Ed. 773. In view of this statement there can be no doubt that the court below gave the jury a correct definition of the word "wilfully" as used in the statute under consideration.

The defendants advance many other reasons why their convictions should not be sustained. We have considered them all but find those which we have not mentioned too lacking in merit to warrant discussion.

The judgments of the District Court are affirmed.