**UNITED STATES v. M. KRAUS & BROS.,
Inc. (two cases).**

**No. 162.**

Circuit Court of Appeals, Second Circuit.

May 14, 1945.

John F. X. McGohey, of New York City (Harold J. McAuley, of New York City, of counsel), for plaintiff-appellee.

Milton E. Sahn, of New York City (Alfred C. McKenzie, of Brooklyn, N. Y., of counsel), for defendant-appellant.

Before EVANS and CHASE, Circuit Judges, and HINCKS, District Judge.

EVANS, Circuit Judge.

Appellant corporation was fined $2,500 on each of nine counts* for violating Revised Maximum Price Regulation No. 269, Sec. 1429.5, announced pursuant to Title 50, U.S.C.A. § 901, et seq. It required purchasers of poultry, so it is charged, to buy unwanted commodities, i.e., chicken feet and chicken skin, in order to obtain regular poultry. The jury found the individual defendant not guilty and the corporation, guilty.

| *Information | Amt. of Poultry Product Sold | To | Additional Product and Price | | |
|---|---|---|---|---|---|
| No. C117-64 | | | | | |
| Count 1 | 875 lbs. | M | 427 lbs. chicken feet | @ 15¢ | lb. |
| 2 | 104 " | B | 5 " " | @ 20¢ | " |
| 3 | 106 " | B | 5 " " | @ 20¢ | " |
| 4 | 105 " | B | 5 " " | @ 20¢ | " |
| 6 | 378 " | Z | 226 " " | @ 15¢ | " |
| No. C117-65 | | | | | |
| 3 | 358 " | Z | 100 lbs. chicken skin | @ 30¢ | " |
| 4 | 211 " | C | 110 lbs. chicken feet | @ 15¢ | " |
| 5 | 340 " | Ku. | 75 lbs. chicken skin | @ 30¢ | " |
| 6 | 205 " | Kl. | 100 lbs. chicken feet | @ 15¢ | " |

The sales which furnished the basis of each charge occurred on either November 22nd, 23rd, or 24th, 1943.

The fines were assessed at the rate of $2,500 for each of the nine counts on which the defendant corporation was found guilty. There was some evidence that $22,500 fine bore a relation to the total amount of income derived by the corporation from the sale of these extra commodities of chicken feet and skin.

There was evidence which supports the statement that when retail butchers placed their orders for poultry at the Thanksgiving Holiday Season in 1943 with defendant, they were told they would receive their share of poultry and to pick it up. When they came to the wholesale store of the defendant corporation the luggers would place the barrels of poultry on the retailer's truck, and would also place separate barrels or boxes of chicken skin, feet or gizzards. These added items had not been ordered by the retailers nor were they particularly wanted by them. Separate bills were rendered the retailers, one for the poultry, and the other for the unordered feet, etc. There is some evidence that some of these feet were actually sold at the price the retailer paid for them, but the great part of them were given to the "fat" collector, to charitable institutions, or as gratuities to customers.

We have no doubt that the jury was justified in finding that the device of selling these unwanted items, supplementary to the sale of poultry, was a plain device to circumvent the ceiling price on poultry.

Defendant presents five alleged errors:

(1) No count of either information defines a crime under Sec. 1429.5 of Reg. No. 269.

(2) The regulation, which is the basis of the charge is unconstitutional.

(3) Failure of evidence to establish guilt.

(4) The court committed prejudicial error in characterization of certain of defendant's evidence as claptrap and poppycock and in stating that gizzards, chicken feet, and chicken skin were utterly useless to the purchaser.

(5) Errors as to admission of evidence.

■ We pass without extended discussion points 1, 2, and 3. They are, in our opinion, clearly without merit. The informations were sufficiently detailed to apprise the defendants of the illegal acts with which they were charged, and enabled them to defend themselves against the charges. They so clearly follow the wording of the Regulations that they must stand or fall with the validity of the Regulations.

■ That the Maximum Price Regulations No. 269, Sec. 1429.5, covering a case (disclosed by the evidence here) where butchers who were eagerly seeking to acquire poultry to fill their Thanksgiving trade, paid ceiling prices for the poultry, and also were required to purchase and pay for unwanted articles of little or no market value and pay for them prices in excess of their value, are valid, has been the uniform holding of the courts. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Brown v. Banana Distributors, D.C., 52 F.Supp. 804; United States v. Armour & Co., D.C., 50 F.Supp. 347; Rottenburg v. United States, 1 Cir., 137 F.2d 850; Rosensweig v. United States, 9 Cir., 144 F.2d 30.

*Ruling of Trial Court in Refusing Defense Permission to Examine Prior Affidavits of Witness.* Witnesses Braverman and Moskowitz had executed affidavits for the District Attorney and for O. P. A. investigators, in preparation for the trial. On the witness stand these affidavits were used by government counsel to refresh these hostile witnesses' memories, the witnesses having given answers which were contrary to their statements in the affidavits. Defendants' attorney asked permission of the court to examine these affidavits and was denied such use. Claim is here made that such denial constitutes prejudicial error.

■ We unhesitatingly say that the more orderly procedure would be to let defense counsel see these affidavits. See Wigmore on Evidence, Secs. 734-765. The Supreme Court rather recently discussed this problem at length. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 231-237, 60 S.Ct. 811, 84 L.Ed. 1129. More need not be written.

The documents there being used were statements made by witnesses before the grand jury. The Court of Appeals held the use of such statements on about 90 occasions was prejudicial error. The Supreme Court held the contrary:

"Use of grand jury testimony for the purpose of refreshing the recollection of a witness rests in the sound discretion of the trial judge and no iron-clad rule requires that opposing counsel be shown the grand jury transcript where it is not shown the

witness and where some appropriate procedure is adopted to prevent its improper use. * * *

"Permission to use grand jury testimony to refresh the memories of witnesses in a criminal case is not ground for a new trial, even if erroneous, where it was clearly not prejudicial and did not affect substantial rights of the defendant."

The court however guarded its holding by saying,

"Normally, of course, the material so used must be shown to opposing counsel upon demand, if it is handed to the witness. * * * And the reasons are that only in that way can opposing counsel avoid the risks of imposition on and improper communication with the witness, and 'detect circumstances not appearing on the surface' and 'expose all that detracts from the weight of testimony.' *' * * If the record showed that the refreshing material was deliberately used for purposes not material to the issues but to arouse the passions of the jurors, so that an objective appraisal of the evidence was unlikely, there would be reversible error. Likewise there would be error where under the pretext of refreshing a witness' recollection, the prior testimony was introduced as evidence. * * * In addition, it clearly appears that the use of this material was not prejudicial."

"The record minus that testimony clearly establishes all the facts necessary for proof of the illegal conspiracy. * * * Hence, the situation is vastly different from those cases where essential ingredients of the crime were dependent on testimony elicited in that manner or where the evidence of guilt hung in delicate balance if that testimony was deleted. * * * Hence assuming arguendo, that there was error in the use of the prior testimony, to order a new trial would be to violate the standards of § 269 of the Judicial Code, 28 U.S.C.A. § 391, since the 'substantial rights' of respondents were not affected. There are no vested individual rights in the ordinary rules of evidence; their observance should not be reduced to an idle ceremony."

■ We can not conceive how defendant suffered by reason of the court's refusal to direct Government counsel to let defendant's counsel see the affidavits.

The ruling was within the court's discretion. Wigmore, Sec. 765. There is nothing in the record to demonstrate any abuse of this judicial discretion. If counsel desired to predicate a claim of error upon the ruling he should have asked to have the affidavits marked for identification and have taken appropriate steps to include them in the record herein. Certainly without knowledge of their entire content, this court cannot say that the defendant by the ruling below was deprived of opportunity for a "cross-examination based upon the paper" whereby "he may further detect circumstances not appearing on the surface, and may expose all that detracts from the weight of the testimony." Wigmore, Sec. 762.

Both Braverman and Moskowitz were hostile government witnesses. They permitted their hostility to go so far as to dispute their sworn statements to the effect that they knew and dealt with the individual defendant, Max Kraus. It was not a case of discrediting defendant's witnesses, but rather an effort, and a legitimate one, on the part of the Government, to secure the truth from a hostile witness. The statement which was used was intended to connect the individual Kraus with the sale of the poultry. A situation was presented, it seems to us, where the Government might well have considered the advisability of charging perjury against these witnesses. Counsel for the government were struggling with witnesses, which they had to use, but who were defendant Kraus' customers. Unfortunately these witnesses were no credit to defendant or anyone else. But the illegal transaction necessitated their use as witnesses. They denied connection with Max Kraus. In so doing they disputed their previously made sworn statements. So confronted by hostile and unworthy citizens, the government sought to give them every possible chance of telling the truth. Their sworn statements were shown them.

Just what value an examination of said witnesses' written statement by defendant's counsel would have been, we cannot see. Did counsel wish to discredit the witnesses? Obviously not. The witnesses were so hostile to the government and so friendly to the defendant that a reading of their testimony suggests perjury. And the word "suggests" is mild. If defendant's counsel sought to add greater discredit to the witnesses than their own change in testimony produced, he would not have

helped his client. Moreover, the jury ultimately found in favor of the individual defendant, Kraus.

We are clearly convinced that no prejudicial error was committed in point of fact or within the recent holding of the Supreme Court. United States v. Krulewitch, 2 Cir., 145 F.2d 76; United States v. Cohen, 2 Cir., 145 F.2d 82; United States v. Simonds, 2 Cir., 148 F.2d 177, decided March 13, 1945.

■ Finally we come to the alleged error in the court's instructions to the jury. It is argued that the court characterized certain evidence offered by defendant as "claptrap and poppycock." The instruction, as given, reads:

"There was a complaint made that I excluded evidence of something that could have been proved. The law of evidence excludes all claptrap and poppycock. Anything else is admissible. The best illustrations I can give is right before you as a jury, where I first excluded one butcher from talking about his sales of chicken feet, and because subsequent testimony made an issue of what he was going to testify to, if you will remember, I allowed him to be recalled to testify. I have excluded no evidence but I have excluded all claptrap; that is why I am here, to exclude that. You are not to assume that any injustice has been done anybody because I did not do any injustice."

No exception was taken to this charge. No request was made to define claptrap and poppycock. If we accept the dictionary definition of these words, we must assume that claptrap means "language designed to evoke applause; cheap or unworthy articles." Poppycock is defined as "trivial," "stuff." With this meaning of the words there was at least no inaccuracy in stating that the law of evidence excludes all claptrap and poppycock.

While it might well be argued that "anything" other than claptrap and poppycock "is admissible," as evidence is hardly correct, there was and is no criticism from counsel as to this sentence. Counsel and the jury evidently understood the charge to mean that only material and relevant evidence was admissible, and all hearsay and irrelevant evidence was excluded.

The judgment is affirmed.

HINCKS, District Judge (dissenting).

My dissent is based upon the exclusion of evidence. The defendant offered witnesses to prove that there was a general market for the chicken feet, skin and gizzards the sale of which, in conjunction with the defendant's sales of poultry, the government claimed was a device for evading the ceiling price on the poultry. This evidence was excluded and on inquiry by defense counsel when confronted by this ruling as to whether it was necessary for him to offer his other witnesses on that issue, the judge said: "It is not only unnecessary but I direct you not to do it. The meaning of my ruling is perfectly clear. It is unnecessary to repeat it."

In so ruling, it appears to me that the judge must have overlooked the tendency of such evidence to negative an inference that the sales were made with evasive intent. It was admissible on that fundamental issue, and its exclusion was erroneous.

Nor was the error cured. To be sure, at a later stage after the United States Attorney, on his cross-examination of the individual defendant, had inquired as to the general market for these by-products, defendant's counsel encountered no objection when he again offered one witness on that issue. By that time his other witnesses, for aught that appears, had been excused and were no longer available. In any event, the judge's exclusionary direction was still in effect and the defendant's other witnesses were never heard.

For what to me seems prejudicial error I think the appellant entitled to a new trial.