### UNITED STATES v. FRIED.
### No. 361.

Circuit Court of Appeals, Second Circuit.
June 21, 1945.

---

1012

James J. McLoughlin, of New York City, for appellant.

J. Wolfe Chassen, Miles F. McDonald, U. S. Atty., and Vine H. Smith, Asst. U. S. Atty., all of Brooklyn, N. Y., for appellee.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

PER CURIAM.

On appeal from a judgment of conviction for selling liquor in violation of § 904(a) of Title 50 U.S.C.A. Appendix, at prices higher than those fixed by the regulations of the Price Administrator of the Office of Price Administration, in accordance with § 902(a). Only two questions are raised upon this appeal: the insufficiency of the information, and the incompetency of the testimony by which the prosecution established the maximum prices, above which the defendant was accused of selling the liquors in question. The prosecution had originally procured an indictment for the same offenses: in sixty counts, one for each sale; but, for some undisclosed reason, it did not choose to proceed under this, and in its stead filed an information: also in sixty counts and for the same sales. Each count alleged the date of the sale, the buyer, the kind of liquor (including the brand), the amount and the price; and concluded as follows: "which sum constituted a price per case higher than the maximum price per case permitted to be charged by said defendant for such merchandise under Maximum Price Regulation Nos. 193 and 445 as promulgated by the Price Administrator." The information was filed on August 4, 1944, and the case came on for trial on October 24, after several continuances; meanwhile the accused had made no application for a bill of particulars. The trial continued for eleven days, at the end of which the jury brought in a verdict of guilty upon thirty-one counts, and of acquittal upon twenty-nine. The judge sentenced the defendant to six months imprisonment on each of three counts—the sentences to run consecutively—and fined him $2,000 upon each of twenty-eight counts— $56,000 in all. No challenge was made of the form of the information, until the "Grounds of Appeal" were filed, as provided in Rule III of the Supreme Court Rules governing criminal appeals, 18 U.S. C.A. following section 688.

Strictly, we need say no more as to the information than that the objection was raised too late; for no essential allegation was omitted, and the defect, if any, was only of insufficiency in form: i.e. that instead of facts the information alleged only legal conclusions. Such an objection is abandoned when it is not taken, at the latest before verdict. United States v. Goldsmith, 2 Cir., 68 F.2d 5; Sparks v. United States, 6 Cir., 90 F.2d 61. But we are not content to dispose of the objection in this way, lest it be assumed that we thought it of substance, or should have sustained it, if it had been taken in season. We regard the defect as falling within § 556 of Title 18 U.S.C.A., and of no importance unless the accused can show that the information as a whole does not advise him adequately of what he has to meet. Not only in civil, but in criminal, proceedings we demand nothing more than that a party charged shall be told the facts fully enough, and in sufficient season, to enable him to present his defence. Inconsistencies between allegation and proof, and inadequacies in allegation, are unimportant unless they result in

some such prejudice. Our latest decisions upon the point are United States v. Achtner, 2 Cir., 144 F.2d 49; United States v. Pape, 2 Cir., 144 F.2d 778; and United States v. Wodiska, 2 Cir., 147 F.2d 38. In so far as the decisions in United States v. Johnson, D.C., 53 F.Supp. 167 and United States v. Ferranti, D.C.N.J., 59 F.Supp. 1003, are to the contrary, they do not represent the law of this circuit.

The second objection is that the witnesses, called to testify to the maximum prices fixed by the Price Administrator, were allowed to state their bare conclusions, based upon the regulations. Had the defendant been willing to rely upon his objection to this testimony, and had the record contained nothing more as to the maximum prices, it might indeed have been a serious question whether the conviction could stand. We have, indeed, no disposition to abate what we said in Central R. R. Co. of New Jersey v. Monahan, 2 Cir., 11 F.2d 212, 214: i.e. that ordinarily it is better to take a witness's conclusion upon a matter of fact, allowing its basis to be developed by further examination, or cross-examination; and that nothing is gained by excluding it, for the ordinary witness is so accustomed to disregard any distinction between fact and inference that it merely puzzles him, and even seems nonsense, to insist upon one. But the conclusions of these witnesses were of a different sort, for they involved the witness's interpretation of the regulations. They were answers to what courts call "mixed questions of law and fact"; and at some stage of the inquiry it was clearly necessary that there should be disentangled that part which depended upon the witness's understanding of the regulations, from that part which consisted of inferences from what he had seen or heard. We are therefore in entire accord with the caution of the Third Circuit in United States v. Lutz, 142 F.2d 985. Indeed, in this day when the legality of so many private transactions is increasingly coming to depend upon their conformity with labyrinths of regulations, it would invert the burden of proof to allow the prosecution merely to call a witness to swear that the accused's conduct had not been in harmony with administrative standards, and to insist that he must explain why it was not.

■ But in the case at bar, as so often happens, the defendant himself supplied by cross-examination what was missing. The regulations provided separately for imported and domestic liquors. Domestic liquors were divided into a number of classes: those brands sold before March, 1942, and remaining unchanged; those sold before that time, but later changed in formula; those introduced after March, 1942, and remaining unchanged; those introduced after March, 1942, and changed thereafter; those introduced after June, 1943, when the amendment went into effect which controlled all but one of the sales of domestic liquor here in question. As to brands on sale in March, 1942, and unchanged, the prices were to remain as of that date; as to brands, introduced after March, 1942, the owner was to look about for their nearest match, and use that price as his own. Allowances might be made for changes in taxes, but for nothing else. In the case at bar, the employee of the firm, for which the defendant sold the liquors in question, who had been charged with the duty of making the prices for all of the firm's brands, testified upon the trial; and said that in every case he had used the official forms required by the Administrator, and had calculated the prices in accordance with what we have just said. These forms were put in evidence for all the domestic brands charged in the information. He also swore that in all cases he had told the defendant what the filed prices were.

■ The defendant asserts that counts eighteen and forty-seven were not proved, because they concerned sales made before the prices had been fixed by filing the proper forms. It is true that the sale charged in count eighteen was on July 8, 1943, and that charge in count forty-seven was on May 24, and that the forms filed were dated July 9th, 1943. However, the sales were of a domestic whisky known as "Gilbert Blended," not "Gilbert de Luxe," which came out after March, 1942. "Gilbert Blended" had been sold in March, 1942, and its price was therefore fixed without the need of comparing it with another brand sold at the same time. The objection therefore comes down to no more than this: that in the case of a liquor sold in March, 1942, the price, as of that date, was not fixed until the owner of the brand had filed the proper form setting out its price. The regulations do not so provide, and the offence was proved when a sale was proved at more than the price in March, 1942. The form, though filed after the sales, was however evidence of what that price had been.

The sale of only one brand of foreign liquor was charged in the information, and as to that a second witness testified as to its highest price in March, 1942, which was the controlling price, as in the case of "Gilbert Blended," since the brand had been sold at that time and had not been changed.

Since the court could take notice of the regulations, the proof, as finally made, was competent and complete, and the original error, if there was one, became immaterial.

Judgment affirmed.