## UNITED STATES v. ARROW PACKING CORPORATION et al.

### No. 144.

Circuit Court of Appeals, Second Circuit.

Jan. 29, 1946.

Writ of Certiorari Denied April 22, 1946.

See 66 S.Ct. 962.

670

Samuel Mezansky, Moses Polakoff, and Irving Spieler, all of New York City, for defendants-appéllants.

Harold J. McAuley and John F. X. Mc-Gohey, U. S. Atty., both of New York City, for appellee.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

Newman and his corporation appeal from a judgment convicting them upon two informations for selling meats at higher prices than the maximum prescribed by the Office of Price Administration, and for failure to keep accurate records for inspection. The first information concerned six different sales; a second information concerned four. A third information from which the corporation alone appeals, charged it with eleven other sales. To each was added a count for failure to keep accurate records. The points raised on the appeal are: (1) That there was not enough evidence to support the verdict; (2) that transactions between one, Lorsch, Newman's bookkeeper, and certain of the witnesses were incompetent against Newman; (3) that the court refused a proper request to charge; and (4) that the counts for

failure to keep accurate records should have been dismissed.

The prosecution's evidence consisted of the testimony of five retail butchers, and of an official of the Office of Price Administration. Each butcher testified that he bought meat of Lorsch at above the maximum prices, and that Lorsch billed him at the maximum price and collected the overcharge in cash. The witnesses all saw Newman about the small shop at the time when they made their purchases, but only one, Bayobeni, testified to any talk with him. Bayobeni complained to Newman that the price he was being charged for turkeys—$55—was too much, to which Newman answered that, if Bayobeni was unwilling to pay as much, he could not have them. The maximum lawful price was $44.50; Bayobeni paid $10.50 in cash and gave his check for $44.50. The official of the Office of Price Administration who testified to the "ceiling" prices, said that there was no "ceiling" for "cooked tongue," the sale of which was the subject of the second count of the first information.

As to the first point, we should hesitate to hold that the testimony of the retail butchers other than Bayobeni was not of itself enough to support the verdict. Newman's shop was only about thirty feet square and he was present at the time of nearly all the purchases which were the subject of the informations. Lorsch fixed the prices, and in some cases the butcher paid both the lawful price and the overcharge in cash, receiving a receipt for the lawful price only. In other cases Lorsch billed him for the lawful price and he paid the over-charge in cash, either at the time of the purchase or later. If Newman was not aware of what Lorsch was doing, it was because Lorsch was uniformly engaged in a course of unlawful dealing on his own account, keeping the cash and concealing it from Newman, although by that course he was exposing Newman to just the kind of prosecution which ensued. All things are possible, but not all are probable, and the likelihood that Lorsch should have openly carried along such a practice under Newman's very eyes without Newman's complicity was most remote. Be that as it may, Bayobeni's testimony, if the jury believed it, left no possible doubt as to Newman's knowledge in that instance, and permitted the inference—indeed demanded it—that he was a confederate of Lorsch in the other purchases. The competency against New-

man of the butchers' purchases necessarily follows.

■ As to the third point the facts were as follows. The court refused the defendants' request to charge which appears in the margin.[1] In place of this he told the jury that they "must be satisfied beyond a reasonable doubt by clear and convincing evidence that Newman wilfully participated in the acceptance of prices in excess of the ceiling in violation of the Regulations involved." To this he added later the following: "circumstantial evidence is legal and acceptable evidence. It is that evidence which tends to prove a disputed fact by proof of other facts which have a legitimate tendency to lead the mind to a conclusion that the fact exists which is sought to be established. The circumstantial evidence must be such as to exclude every reasonable hypothesis except the fact sought to be proved." In the light of the passages just quoted it was plainly unnecessary for the judge to grant the request.

■ There was evidence to support the verdict upon the counts for failing to keep accurate records. Since the overcharges were paid in cash, and the receipts given were for the ceiling prices, the jury could not rationally have concluded otherwise than that books were kept in accordance with the receipts and were false. On the other hand, there was not enough evidence to sustain the second count of the first information. There was no "ceiling" price for "cooked tongue" the sale of which that count charged as the offence, although there was a "ceiling" on "smoked beef tongue," which apparently was 51 cents, the amount charged to Meyers in his bill in addition to which he paid eight cents. The receipt given Meyers is however hard to decipher; apparently, it reads "R. E. tong," which may have meant "ready to eat tongue," and have in fact been "smoked beef tongue." But Meyer described his purchase only as "cooked tongue"; and the proof is too obscure to support any conclusion. It seems to us therefore that the second count of the first information was not proved.

Conviction affirmed, except as to the second count of the first information, the conviction upon which is reversed.

---

[1] To warrant a conviction on circumstantial evidence each fact necessary to the conclusions of guilt must be proved beyond a reasonable doubt, and all the facts so proved must be consistent with each other and with the main fact sought to be proved, and the circumstances, taken all together, must be of a conclusive nature and producing in effect a reasonable and moral certainty that the accused committed the offense charged. The mere union of a limited number of independent circumstances, each of an imperfect and inconclusive character, will not justify a conviction. They must be such as to create and justify full belief according to the standard rules of certainty. It is not sufficient that they coincide with and render probable the guilt of the accused. The facts so proved must be incompatible with innocence and incapable of explanation upon any other reasonable theory than that of guilt.