UNITED STATES v. GEORGE F. FISH, Inc., et al.

No. 158.

Circuit Court of Appeals, Second Circuit.
Feb. 8, 1946.

On Rehearing April 26, 1946.

Writ of Certiorari Denied June 10, 1946.

See 66 S.Ct. 1377.

Lewis F. Glaser, of New York City (Edgar F. Sachs, of New York City, on the brief), for defendants-appellants.

John C. Hilly, Asst. U. S. Atty., of New York City (John F. X. McGohey, U. S. Atty., of New York City, on the brief), for plaintiff-appellee.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

An information filed in the District Court charged the defendants George F. Fish, Inc., a wholesale dealer in fruits and vegetables, and Michael Simon, its salesman, with "unlawfully, wilfully and knowingly" evading the provisions of Revised Maximum Price Regulation No. 426, issued under the authority of § 2, Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 902. After a jury verdict of guilt, the court entered judgment of a fine against the corporate defendant, and imprisonment against the individual defendant. 50 U.S.C.A.Appendix, §§ 904, 925(b). Defendants appeal from the conviction, urging the invalidity of the regulation, the failure of the information to allege a crime, the insufficiency of the evidence to support the verdict, and the nonliability of the corporate defendant to criminal prosecution for the acts charged.

While the regulation does not appear doubtful or unclear to us, United States v. M. Kraus & Bros., 2 Cir., 149 F. 2d 773, 774, certiorari granted M. Kraus & Bros. v. United States, 66 S.Ct. 40, it seems that we are without jurisdiction to consider the objection of unconstitutionality for vagueness and ambiguity. In an effort to obtain uniformity in the application of the Act, Congress established a procedure by which a person affected may first protest to the Emergency Price Ad-

800

ministrator and thereafter test the validity of any regulation, order, or price schedule by filing suit in the specially constituted Emergency Court of Appeals, with final review accorded upon petition of certiorari to the Supreme Court. 50 U.S.C.A.Appendix, §§ 923(a), 924(a), 924(d). In Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834, the Supreme Court conclusively determined that the invalidity of a regulation on grounds · of arbitrary and capricious operation may not be raised as a defense in a criminal proceeding. Though the Court left open the present question of unconstitutionality disclosed upon the face of the regulation, Congress thereafter amended the Act so as to provide an additional remedy in criminal cases.[1] As the Act now stands, an accused in a criminal proceeding may make timely application to the court for leave to file a complaint in the Emergency Court of Appeals challenging the validity of the regulation. 50 U.S.C.A.Appendix, § 924 (e), added June 30, 1944, and amended June 30, 1945. The court in which the proceeding is pending must grant leave if it finds that the defendant is acting in good faith and there is "reasonable and substantial excuse" for his failure to take advantage of the protest proceeding provided by the original act. Congress adopted this amendment with the express purpose of eliminating any question of due process in the situation now presented; and we think it has succeeded in doing so. The defendants here, having neither employed the protest proceeding nor applied for a determination of the issue by the Emergency Court of Appeals, cannot now raise the invalidity of the regulation. Old Monastery Co. v. United States, 4 Cir., 147 F.2d 905, affirming United States v. Renken, D.C.W.D.S.C., 55 F.Supp. 1; Taylor v. United States, 9 Cir., 142 F.2d 808, certiorari denied 323 U.S. 723, 65 S.Ct. 56.

■ The regulation here particularly involved is the "evasion" section of Maximum Price Regulation 426, which prohibits evasion of the stated price limitations, "whether by direct or indirect methods,

in connection with any offer, solicitation, agreement, sale, delivery, purchase or receipt of or relating to fresh fruits or vegetables alone or in conjunction with any other commodity or by way of commission, service, transportation or any other charge or discount, premium or other privilege, or by tying-agreement or other trade understanding or otherwise."[2] The information charged that the defendants on three specified dates evaded the maximum price regulation by compelling J. M. Fierro and William Zwerdling to purchase unrationed and undesired commodities as a condition to the purchase of a rationed item. Defendants insist that the information failed to allege a crime, since the nominal charge for the lettuce was the maximum price and the unrationed items were sold at ceiling. That such a sale nevertheless constitutes a tying-agreement under the regulation was determined by this court in United States v. M. Kraus & Bros., supra; and this has been the uniform view of the district courts. United States v. Armour & Co. of Delaware, D.C.Mass., 50 F.Supp. 347; Brown v. Banana Distributors of Connecticut, D.C.Conn., 52 F. Supp. 804; Bowles v. Cudahy Packing Co., D.C.W.D.Pa., 58 F.Supp. 748. We can see no reason to depart from our earlier decision. A rationed item cannot be said to be actually sold at ceiling when, although the price quoted on it is the maximum legal price, there is at the same time an enforced sale of an unrationed commodity. It seems obvious to us, as it certainly would to the consuming public, that when a customer who desires to obtain lettuce must buy honeydew melons, broccoli, or celery in order to get it, he gives a consideration above and beyond that fixed by the maximum price regulation.

■ A mere reading of the information indicates the absence of merit in defendants' further contention that it was not sufficiently detailed. They were informed of the factual basis of the claim, so that they could adequately prepare a defense; and any judgment in the present suit would constitute a bar to double jeopardy

---

[1] See the remarks of Senator Danaher, 90 Cong.Rec. 5305, where he quotes the sentence reserving this issue in the Yakus case and then says: "But in what we have done we have perfected the two points as to which the Supreme Court had entered no decision, to the end that there can be no question of the denial of or the existence of due process. Thus

we afford a remedy which is a complete answer in both these respects, because we give the citizen time within which he can file the protest." See also the remarks of Senator Wagner, 90 Cong.Rec. 5289, and, more generally, 90 Cong.Rec. 5300–5306, 5365–5375.

[2] Sec. 11 of Art. I of Sec. 1439.3 of Maximum Price Regulation 426.

in another. United States v. Fried, 2 Cir., 149 F.2d 1011; United States v. Achtner, 2 Cir., 144 F.2d 49.

Defendants next contend that the evidence failed to prove the government's case beyond a reasonable doubt. Questions of credibility were of course for the jury; and, as we have had occasion to point out so often lately, our task is not to discover evidence convincing beyond a reasonable doubt, but rather to ascertain whether there was basis for the jury's conclusion. United States v. Kushner, 2 Cir., 135 F.2d 668, certiorari denied Kushner v. United States, 320 U.S. 212, 63 S.Ct. 1449, 87 L.Ed. 1850; United States v. Greenstein, 2 Cir., 153 F.2d 550, citing many of our recent cases. The information was in three counts, each charging both of the defendants with the sale to Fierro on November 17, 1943, of 10 boxes of honeydew melons as a condition of the sale of 4 crates of lettuce; to Fierro on November 19, 1943, of 5 boxes of broccoli as a condition of the sale of 5 crates of lettuce; and to Zwerdling on November 27, 1943, of 5 crates of celery as a condition of the sale of 5 crates of lettuce. Concerning the first sale, Fierro testified that Simon told him, "If you want any melons I will try to squeeze you out a few [lettuce]." "Take melons, I will give you lettuce. If you don't take no melons, I haven't got no lettuce." The evidence as to the other two sales was substantially the same; and the bills of sale introduced by the government indicated that simultaneous sales were made. To refute this evidence, defendants point to possible selfish motives which might have led Fierro and Zwerdling to testify as they did; to what they assert to be the circumstantial improbability of the sale of honeydew melons and lettuce at the same time, since they were ordinarily sold from different places; to the failure of Fierro and Zwerdling to complain to the management of the corporation. But these attacks on the prosecution witnesses were for the jury; in the light of their direct testimony, the verdict clearly must stand against this appeal. Much is made of some hesitancy in their testimony. The jury presumably considered this natural in view of their obvious unwillingness to testify and their fear of losing future credit with wholesalers.

The corporate defendant makes a separate contention that the guilt of its salesman is not to be attributed to it. But the Supreme Court has long ago determined that the corporation may be held criminally liable for the acts of an agent within the scope of his employment, New York Cent. & H. R. R. Co. v. United States, 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613; and the state and lower federal courts have been consistent in their application of that doctrine. Zito v. United States, 7 Cir., 64 F.2d 772; C. I. T. Corp. v. United States, 9 Cir., 150 F.2d 85; Mininsohn v. United States, 3 Cir., 101 F.2d 477; Egan v. United States, 8 Cir., 137 F.2d 369, certiorari denied 320 U.S. 788, 64 S.Ct. 195, 88 L.Ed. 474; United States v. Arrow Packing Corp., 2 Cir., 153 F.2d 669. See also Director of Public Prosecutions v. Kent and Sussex Contractors, Ltd., [1944] 1 K. B. 146; Moore v. I. Bresler, Ltd., [1944] 2 All. E. R. 515, discussed in 19 Aust. L. J. 51; Chuter v. Freeth & Pocock, Ltd., [1911] 2 K.B. 832; the articles, Corporations and the Criminal Law, 11 Sol. 101; Criminal Liability of Corporations, 88 Sol. J. 97, 139; and the full discussion of corporate responsibility under the penalty provisions of the Act, Regan v. Kroger Grocery & Baking Co., 386 Ill. 284, 54 N. E.2d 210, 219.

No distinctions are made in these cases between officers and agents, or between persons holding positions involving varying degrees of responsibility. And this seems the only practical conclusion in any case, but particularly here, where the sales proscribed by the Act will almost invariably be performed by subordinate salesmen, rather than by corporate chiefs, and where the corporate hierarchy does not contemplate separate layers of official dignity, each with separate degrees of responsibility. The purpose of the Act is a deterrent one; and to deny the possibility of corporate responsibility for the acts of minor employees is to immunize the offender who really benefits, and open wide the door for evasion. Here Simon acted knowingly and deliberately and hence "wilfully" within the meaning of the Act, Zimberg v. United States, 1 Cir., 142 F. 2d 132, 137, 138, certiorari denied 323 U.S. 712, 65 S.Ct. 38, and his wilful act is also that of the corporation. United States v. Union Supply Co., 215 U.S. 50, 55, 30 S. Ct. 15, 54 L.Ed. 87; United States v. Illinois Cent. R. Co., 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773.

Judgment affirmed.

802

On Petition for Rehearing.

PER CURIAM.

We granted rehearing here to consider petitioners' contention that the reversal in M. Kraus & Bros. v. United States, 66 S. Ct. 705, of our earlier decision in United States v. M. Kraus & Bros., 2 Cir., 149 F. 2d 773, cited by us in the opinion herein, required reversal of this conviction. But a careful study of the four opinions rendered by the Supreme Court in that case leads us to doubt that a majority of the justices would hold the regulation here in question too limited to cover the acts charged and proved. There all the justices agreed that the Price Administrator could prohibit evasion of established price ceilings by the mere device of a tie-in sale, i. e., the requirement of a purchase of a secondary product along with the product subject to a maximum price. They divided only as to whether the regulation in question did clearly prohibit such a sale. A majority therefore held that in the absence of clear language to that effect, conviction could be had only upon proof of deficiency in value of the secondary product below its sales price and consequent break-through of the ceiling price on the main article.

[10] Here the regulation, unlike that in the Kraus case, expressly prohibited evasion "by tying-agreement." The question is then whether this definite language supplies the gap found in the other case. Petitioners interpret the prevailing opinion there as requiring more than even these descriptive words to accomplish the outright prohibition required. Possibly this may be so, though the government draws a contrary conclusion and relies heavily upon Justice Murphy's citation of our decision here. But, be that as it may, one of the concurring opinions, that of Justice Rutledge—concurred in by Justice Frankfurter, who also concurred in Justice Murphy's opinion—appears to stress the failure of the regulation there to forbid "tie-in" sales "per se." This would seem to us to be what the present regulation does in so many words. And seemingly the three dissenting justices would agree a fortiori. Under these circumstances of doubt that the insufficiency of the regulation is assured, we think we can appropriately maintain our view that a customer who is forced to buy melons, broccoli, or celery in order to buy lettuce is thereby required to give an additional consideration for the lettuce, and that there is therefore evasion of the stated price limitation "by tying-agreement."

Hence, having heard and considered the petition, we now reaffirm our former decision.

Judgment affirmed.