Chambliss & Chambliss, of Chattanooga, Tenn., for defendant.

### PORTER v. CHATTANOOGA BOX & LUMBER CO.

Civil Action No. 921.

District Court, E. D. Tennessee, S. D.

Oct. 4, 1946.

DARR, District Judge.

The plaintiff seeks an injunction under the authority of appropriate provisions of the Emergency Price Control Act of 1942,[1] as amended, seeking to inhibit the defendant from selling southern pine lumber above ceiling prices.[2] The charge is that the violations were accomplished by prohibited practices.[3]

The defendant has a motion for a summary judgment based upon the pleadings, including its answer with exhibits and an affidavit filed by one of its officers. No counter affidavit was filed.

An examination of the record reflects no issue of fact and the case may be decided upon motion for summary judgment. Rule 56, Federal Rules Civil Procedure, 28 U.S.C.A. following section 723c.

---

[1] 50 U.S.C.A.Appendix, § 901 et seq., Public Law 421, 77th Congress, 2d Session, 56 Stat. 23.

[2] As violating section Revised Maximum Price Regulations No. 19, Sec. 1.

[3] 2d Rev. MPR 19, Sec. 14.

The defendant is engaged in manufacturing boxes and other products. Heretofore the defendant had been buying a portion of its lumber supply from James A. Epperson and J. H. Epperson. Within the last year a new arrangement was effected between the defendant and the Eppersons. On April 24, 1946, James H. Epperson transferred by deed the merchantable pine timber situated upon four tracts of land, for which the defendant paid $9375 in cash. On August 5, 1946, James H. Epperson conveyed to the defendant the merchantable pine timber upon four other tracts for a consideration of $8625 paid in cash. Both deeds provide for adjustment of the consideration price after the timber is removed and measured, such adjustment to be on the basis of $15 per M. On the same day that the deeds were made, J. H. Epperson and James Epperson entered into a contract with the defendant to "cut, log, saw, and haul" said pine timber for a consideration of $30.50 per M.

These servicing contracts are somewhat ambiguous. It appears that the Eppersons might terminate the contracts at anytime. I see nothing therein requiring them to cut, manufacture and transport all of said pine timber. The contracts provide for termination by the defendant at anytime.

The question posed is whether this arrangement circumvents and evades the Act and Regulation, particularly with reference to a separate price for a commodity and a service whereby the aggregate cost of both is more than the ceiling price of the finished commodity. On this question the Administrator has an interpretation[4] which has been carefully considered.

No case on this particular proposition has been presented by counsel except one decision by Judge Bright of the United States District Court of the Southern Division of New York in the case of Bowles v. Miller et al., 68 F.Supp.2d 673. Cases cited wherein there have been decisions on "tying agreements" or "combination sales" of different commodities are not in point except to guide in a construction of the Regulations.[5]

The case by Judge Bright is not analogous to this situation. In that case there was a sale of cloth and processing where the seller billed the cloth and processing separately, theretofore having billed only the finished product. As Judge Bright said, it was simply "having two bills grow where one grew before." This was plainly an evasion.

In the present case there has been a deed made to standing timber for a cash consideration. If this transfer is good, the title to this timber passed to the defendant and under all the authorities, including Tennessee, was real estate. In assuming to buy the timber the defendant, according to the affidavit, wanted to insure a continued supply of lumber as against the uncertainty of buying from the manufacturer. I feel that the avoidance of the ceiling price entered into the negotiations.

While the Eppersons sold the standing timber, they do not have a contractual right to render the services whereby the lumber is produced. The contracts are such that the defendant may terminate at anytime, employ someone else to do the work, or do the work itself. Hence, the sale of the standing timber and the services are independent.[6]

I see no reason why a person manufacturing products from lumber cannot buy standing timber and hire it cut, manufactured and transported, or do the work himself, all without violation of the said Act or any Regulation.

I know of no regulation, nor has my attention been called to any, which undertakes to regulate a price for standing timber or a price for services in connection

---

[4] Digest No. (14) under "General Material—Digests of General Interpretations" appearing on page 3 of the "Manual of Digests of Interpretations of Specific Price Schedules and Regulations" released by the Office of Price Administration March 15, 1943.

[5] Cited: M. Kraus & Bros. Inc. v. United States, 66 S.Ct. 705; United States v. George F. Fish, Inc., et al., 2 Cir., 154 F.2d 798.

[6] As a matter of fact, standing timber is not a commodity or raw material and strictly speaking would not be under the Regulation at all, but for this opinion the standing timber has been considered a commodity or raw material, having in mind the broad principles of the Act.

with cutting, manufacturing and transporting the same.

My judgment is that proof would have to be strong and convincing to set aside deeds conveying real estate, particularly in a proceeding of a collateral nature.

I might add as a matter of equity that the record discloses that the defendant has been selling its products under ceiling prices. That the defendant in procuring southern pine lumber locally has been able to get it at approximately twenty percent less than if secured from points further south and all within the OPA regulations. As I understand, southern pine is not so plentiful in this area, particularly relative to its abundance in the points further south.

After a study of the regulations and the interpretation of the Administrator, I conclude that the transactions between the defendant and the Eppersons were not an evasion or circumvention of 2d Rev. MPR 19 promulgated under the Emergency Price Control Act.

A judgment is awarded the defendant.