**PORTER, O. P. A., v. COLE.**

Civil Action No. 1930.

District Court, N. D. Texas, Dallas Division.

June 10, 1946.

W. B. Branan, of Dallas, Tex., for plaintiff.

Emil Corenbleth, of Dallas, Tex., for defendant.

ATWELL, District Judge.

Plaintiff claims that the defendant violated the OPA statute and regulations by requiring a purchaser who desired bonded whiskey to purchase another item at the same time. That the statutory warning notice was given to the defendant. He prays that the defendant's license to sell

intoxicants be cancelled, that injunctive relief be granted, and that he recover treble damages.

The testimony shows that the defendant conducted five liquor stores, three in Dallas and two in Perry, Texas. That his Dallas sales aggregated $683,800 in the year 1945. That during that period his sales were about 73% whiskey, and about 27% wines, rum and other intoxicants. That represented about 12,659 cases of intoxicants. The Dallas stores sold approximately 164 bottles per day, 121 bottles of which were whiskey.

The profit made was about 26%. The profit allowed under the OPA regulations was 33%. The net profit made by the defendant was about 6¼%. Combination sales were a very small percent. There were five hundred liquor stores in Dallas in 1945.

That upon receipt of the statutory warning notice, he sought OPA headquarters and was assured by the head legal authority that he had a right to tie together a sale of one or more articles provided neither of them was sold above the ceiling price, and, provided that neither was worthless.

There are no sales shown except two sales made to an OPA investigator. Those two sales were respectively for one ⅘th quart of bonded whiskey, and one ⅘th quart of rum. The ceiling price on the whiskey was $4.90, and the ceiling price on the rum was $4.89. This was the amount that was charged the investigator. The salesman refused to sell the whiskey without the rum.

The regulation which the plaintiff declares upon protects the purchaser who is the "consumer," and so declares and excepts from the operation of the definition a government investigating purchaser. "Consumer means any person (except an industrial or institutional user, or, the U. S., or, any agency thereof) purchasing distilled spirits and/or wine for consumption and not for sale." Definitions M.P.R. 445 (No. 9).

The suspension of the license of the dealer is to be made by the court if there is a finding that the person has violated the provisions of such license "regulations, order, price schedules, or requirement, after the receipt of the warning notice." Such suspension shall be for a period of not more than twelve months. This statute was construed by the Supreme Court in Kraus & Brothers, Inc., v. United States, 66 S.Ct. 705, on a case reported below, in 149 F.2d 773, 774.

Cases other than those cited in those decisions are Bowles v. McClean, D.C., 61 F.Supp. 454, and Lane v. Fitzsimmons, D.C., 62 F.Supp. 89.

In a recent case from the Third Circuit, Bowles v. Cudahay, 154 F.2d 891, the regulation was also treated.

The big point, aside from the definition of "consumer," mentioned above, and leaving out of consideration the advice of the OPA attorney, is the Administrator's failure to express adequately his intentions in Sec. 1429.5, so as to cover all tying agreements, regardless of whether those tying agreements and requisites included any violation of the ceiling price on either article, and regardless of the value or worthlessness of either of the articles so sold. It is sufficiently big to merit the criticism and the adverse ruling found in the Kraus case, supra.

The common practice of the trade to attract customers by uniting what is thought to be an attractive figure for two articles, may not be branded as either unfair competition, or, as fraudulent and improper. Certainly in the absence of worthlessness of one of the articles, and in the absence of a violation of the ceiling price of either of the articles, there appears to be no authority for the Administrator to ban such sales. They appear to be legitimate, and to be outside of the fundamental purpose for which the anti-inflation regulation was conceived. This is made quite clear in a number of decisions, and the applicability of the logic of the position is quite evident in this case. This is what the OPA attorney advised the defendant.

Judgment must go for the defendant.