### ANCHOR LIQUOR CO. v. UNITED STATES.

#### No. 3319.

Circuit Court of Appeals, Tenth Circuit.
Nov. 13, 1946.

---

222

Martin A. Threet, of Albuquerque, N. M. (Simms, Modrall, Seymour & Simms, of Albuquerque, N. M., on the brief), for appellant.

K. Gill Shaffer, of Albuquerque, N. M. (Everett M. Grantham, U. S. Atty., of Santa Fe, N. M., and William J. Truswell Asst. U. S. Atty., of La Cruces, N. M., on the brief), for appellee.

Before PHILLIPS and HUXMAN, Circuit Judges, and BROADDUS, District Judge.

## BROADDUS, District Judge.

The Anchor Liquor Company entered a plea of nolo contendere to an information charging the Company with evading the maximum price for Teachers Scotch Whiskey established by Maximum Price Regulation No. 445 pursuant to Sec. 4(a) of the Emergency Price Control Act of 1942, as amended.  50 U.S.C.A.Appendix, § 904(a).  In particular it was alleged that the Regulation had provided a method by which maximum prices could be established for sale of liquor at wholesale and prohibited sales in excess of the established price either by direct or indirect methods or by tying agreements; and that the Company had sold one case of "fifths" of the whiskey to a named buyer for the ceiling price of the commodity on condition that the buyer purchase miniature bottles of whiskey for a given price, thereby exceeding (by such evasion) the maximum price established for a case of Teachers Scotch Whiskey.  It was stipulated that the price paid was the ceiling price for each of the commodities.  Upon consideration of the plea of nolo contendere and of the stipulation the Company was adjudged guilty; and a fine was imposed.  From this action the Anchor Liquor Company appealed.

Whether under the facts of the information and the stipulation, the Company committed an offense against the laws of the United States, is the question of this appeal.  At the time set forth in the information it was unlawful to sell any commodity in violation of any regulation or price ceiling effective under Sec. 4(a) of the Emergency Price Control Act of 1942, as amended.  50 U.S.C.A.Appendix, § 904(a). Conforming to the authority of the Act, Maximum Price Regulation No. 445 had been promulgated by the Administrator, and Sec. 7.8(a) thereof forbade any person to whom the regulation was applicable from selling distilled spirits at a price higher than the maximum price established

under the Regulation. By Sec. 7.8(b), designated "Evasion", it was stated that the provision of the Regulation should "not be evaded * * * by tying agreement, combination sales or trade understanding". Further, it was declared that the specific enumeration of acts constituting evasion was illustrative but not exclusive.

■ The power of the Administrator to promulgate the Regulation or the validity of its terms may only be considered in a proceeding initiated in the Emergency Court of Appeals.[1] As the Company has not challenged the validity of the Regulation before such tribunal, the Regulation shall be regarded as having all the attributes of a constitutional legislative enactment.

■■ The Supreme Court in construing regulations of the Administrator in their criminal aspect has embraced the same rule of strict construction as fundamentally applies to all statutes defining criminal offenses. Accordingly, a regulation of the Administrator must be explicit and unambiguous in informing those subject to its operation of the conduct which will constitute evasion, so as to bring that conduct within the criminal penalties of the Act. What the Administrator has failed to do by clear expression may not be supplied by conjecture. The test of the existence of a penal offense is whether the elements of the evasion of the Regulation are so distinctly expressed that an "ordinary person can know in advance how to avoid an unlawful course of action." M. Kraus & Bros., Inc., v. United States, 327 U.S. 614, 66 S.Ct. 705, 707, 708, 90 L. Ed. ——. Applying the approved test to that portion of the Regulation construed in the Kraus case reading as follows: "Price limitations set forth in this Revised Maximum Price Regulation No. 269 shall not be evaded whether by direct or indirect methods, in connection with any offer, solicitation, agreement, sale, delivery, purchase or receipt of, or relating to, the commodities prices of which are herein regulated, alone or in conjunction with any other commodity, or by way of commission, service, transportation, or other charge, or discount, premium, or other privilege or other trade understanding or otherwise", it was held that such language undeniably prohibits tying agreements when the tied-in commodity is worthless or sold at an artificial price, thereby concealing an above ceiling price for the wanted commodity, but that the language did not prohibit tied-in agreements where the unwanted or secondary commodity was of value and sold at its ceiling or market price.

The Company urges there is no distinction in the regulation to be interpreted in this action and the regulation construed in the Kraus case. On the other hand, the Government asserts that the use of additional and distinctive language by the Administrator in the Regulation involved here meets the test prescribed by the Kraus case, and that Maximum Price Regulation No. 445 of itself prohibits all tying agreements of any nature.[2] The two regu-

---

[1] M. Kraus & Bros., Inc. v. United States, 327 U.S. 614, 66 S.Ct. 705, 90 L. Ed. ——; Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 66, 88 L.Ed. 834; Bowles v. Seminole Rock Co., 325 U.S. 410, 418, 419, 65 S. Ct. 1215, 89 L.Ed. 1700; Case v. Bowles, 327 U.S. 92, 98, 66 S.Ct. 438, 89 L.Ed. ——; United States v. George F. Fish, Inc., 2 Cir., 154 F.2d 798.

[2] The material portions of the Regulation are as follows:

"Sec. 7.8 Compliance with this regulation—(a) No buying or selling above maximum prices. On and after the effective date of this regulation, regardless of any contract, agreement or other obligation, *no person to whom this regula-* tion applies shall sell or supply, and no person in the course of trade or business shall buy or receive, any distilled spirits, wine or service at prices higher than the maximum price applicable to such sale under this regulation, and no person shall agree, offer, solicit or attempt to do any of the foregoing. However, prices lower than the maximum price may be charged or paid.

"(b) Evasion. *The provisions of this regulation shall not be evaded,* whether by direct or indirect methods, in connection with an offer, solicitation, agreement, sale, delivery, purchase or receipt, of or relating to any commodity, or service covered by this regulation, alone or in conjunction with any other commodity, or service, or by way of finder's

lations are in substantial accord as to those portions prohibiting evasions whether by direct or indirect methods in connection with any sale, the commodity price of which is regulated, "alone or in conjunction with any other commodity", and if that were all of the regulation bearing upon an evasion of the maximum price of distilled spirits, we would be constrained to hold under the authority of the Kraus case that the Anchor Liquor Company had not committed a criminal offense. Maximum Price Regulation No. 445, Sec. 7.8 (b) goes much further by the adding of the additional clause that the provisions of the regulation "shall not be evaded * * * by tying agreement, combination sales, or trade understanding". This is a clear and unmistakable pronouncement that tying agreements are an evasion.[3] Further assurance is given to this understanding by the closing sentence of subsection (b) that, "The specific enumeration of acts constituting evasion is illustrative but not exclusive." This is an explicit declaration that a tying agreement is an illustration of an act "constituting evasion."

The Kraus case does not cast doubt upon the conclusion reached. It may not be presumed by the specific designation of tying agreements as an evasion that it was intended to prohibit only those wherein the tied-in commodity was worthless or sold at an artificial price. No such restriction may be conceived from the language used, and none should be imposed by judicial construction. Nor may it be said in the use of the quoted language that the Administrator was emphasizing and re-emphasizing tying agreements of the sort declared prohibited under the ruling in the Kraus case. There would be no sound purpose in declaring an act to be an eva-

sion that had theretofore been so declared, and no reason to believe that the Administrator was engaging in meaningless and useless reiteration.

No ready definition of the term "tying agreement" is at hand. It is no doubt closely akin to the term "combination sale." Both terms, when considered in the light of the provisions and object of the Regulation, carry the meaning of a sale of two or more commodities on condition that all the commodities must be purchased or none will be sold—hence, a sale by tying agreement; and as it is pertinent to the conceded facts in this case, it means the necessity of the buyer purchasing a tied-in commodity not wanted by the buyer in order to secure the desired commodity which was the moving purpose for the buyer's purchase. The compulsory purchase of the tied-in commodity is an additional consideration as consideration includes not only what may be paid in money but any other legal detriment. Conversely the detriment to the purchaser was a benefit to the Company, and a consideration over and above the ceiling price. Otherwise the Company would not have compelled the purchase of the miniatures by the tying agreement. Such an agreement is an evasion of the maximum price established by the Regulation. We are of the opinion that an ordinary person upon a reading of the Regulation would have known in advance to avoid sales of distilled spirits by tying agreements with other commodities regardless of the value of such commodities.

We conclude that an offense against the laws of the United States is shown by the facts of the information and stipulation. As the plea of the Anchor Liquor Company admits such facts the sentence must be affirmed.

---

fees, brokerage, commission, service, transportation, or other charge or discount, premium or other privilege; *by tying agreement, combiation sales, or trade understanding;* by any change in style or manner of packing; by requiring the buyer to purchase packaged distilled spirits or wine on a per drink basis; or in any other way. *The specific enumeration of acts constituting evasion is illustrative but not exclusive."* (Italics ours)

[3] United States v. George F. Fish, supra, 154 F.2d 802; United States v. Armour & Co. of Delaware, D.C.Mass., 50 F.Supp. 347, 349 (a criminal case); Brown, Admr. v. Banana Distributors of Connecticut, et al., D.C.Conn., 52 F. Supp. 804 (a civil action); Bowles, Admr. v. Cudahy Packing Co., D.C.W.D. Pa., 58 F.Supp. 748 (an injunction action); Coffin-Redington Co. v. Porter, 9 Cir., 156 F.2d 113. Contra, Porter v. Cole, D.C.N.D.Tex., 66 F.Supp. 11.