DUNMAR ROBES, LTD., Appellant, *v.* PASTOR PAUL BUENA-
VENTURA, I, Respondent.

First Department, January 15, 1952.

*Leo A. Greenbaum* of counsel (*Geiger & Geiger,* attorneys), for appellant.

*Herman Strizver* for respondent.

Van Voorhis, J.  The complaint was dismissed upon the law at the close of plaintiff's case, upon the ground that plaintiff had failed to prove that it had suffered damages arising from nondelivery of merchandise contracted to be shipped by defendant f.o.b. Rio de Janeiro, Brazil.

There is no evidence that the market value of these goods exceeded the contract price at point of delivery, viz., on board steamship for export at Rio de Janiero.  But there is evidence that other goods of similar nature were not available for export from Brazil to the United States; and no contention has been made that plaintiff's proofs were deficient in failing to establish lack of an available export market in Brazil.

Plaintiff's theory is that it may recover special damages, due to a situation resulting from the existence of price control at that time in the United States.  Plaintiff is a manufacturer of bathrobes.  It did not use in its business the variety of textile which it contracted to buy from defendant.  Plaintiff's business required a kind of domestic cotton piecegoods which it had been accustomed to buy from a corporation in the United States, named Aleo Mills, Inc. (hereafter called " Aleo ").  The latter kind of material, which plaintiff would manufacture into bathrobes, was in short supply at Office of Price Administration (O. P. A.) ceiling prices.  So, also, were imported textiles of the type which defendant agreed to sell to plaintiff in Brazil.  Upon this occasion, Aleo was unwilling to sell to plaintiff the quantity of domestic piecegoods which it required, for the reason that to

do so would disappoint too many other customers who wanted the same kind of merchandise but would be unable to get it if plaintiff's large order were filled. The special damage claimed by plaintiff arises from the circumstance that it persuaded Aleo to fill its order in the quantity required, on condition that in exchange plaintiff would sell to Aleo the merchandise contracted to be bought from defendant in Brazil. Other customers of Aleo could use the Brazilian material, even if it did not suit plaintiff's needs. Aleo's customer relationships might not sour if it could fill the orders of those who wanted the Brazilian merchandise which would also enlarge Aleo's business, so that Aleo was willing to risk whatever dissatisfaction might ensue if it sold to plaintiff all that plaintiff wanted. Accordingly, a contract was entered into between plaintiff and Aleo for an exchange of merchandise, in each instance, at O. P. A. ceiling prices. Plaintiff was unable to perform its part under this exchange agreement, due to the nondelivery of the material described in the complaint by defendant to plaintiff at Rio de Janeiro; consequently Aleo refused to deliver to plaintiff the domestic piecegoods covered by the contract of exchange. Plaintiff seeks to recover from defendant, in this action, the profit which it would have derived from selling the bathrobes that it was unable to manufacture out of the material which it would have received from Aleo, after deducting the loss in handling the Brazilian goods from defendant.

Without considering other questions, we think that the trial court was right in dismissing the complaint upon the ground that the exchange agreement which plaintiff had made with Aleo was illegal under O. P. A. regulations then in force. There being no available market for the goods purchased by plaintiff from defendant, plaintiff bases its claim to damage upon " the loss directly and naturally resulting * * * from the seller's breach of contract ". (Personal Property Law, § 148, subd. 2.) Plaintiff could recover against defendant only upon the theory that its failure to obtain the bathrobe material from Aleo was in consequence of defendant's failure to deliver the Brazilian material to plaintiff. Plaintiff is, therefore, committed to the view that its resale of the Brazilian goods to Aleo was tied into the sale by Aleo to plaintiff of the material for bathrobes. If this exchange agreement between plaintiff and Aleo was illegal, it could not become the foundation of a claim against defendant for special damage (*International Spangles Corp.* v. *Marrow Mfg. Corp.*, 294 N. Y. 295; *Matter of Kramer & Uchitelle, Inc.*,

288 N. Y. 467). It does not help plaintiff that price fixing was thereafter terminated (*Toll* v. *Friedman*, 272 App. Div. 587).

Plaintiff contends that inasmuch as the goods to be exchanged were to be sold respectively at O. P. A. ceiling prices, there could be no violation of the price fixing regulations. That might have been true under the Maximum Price Regulation under consideration in *Kraus & Bros.* v. *United States* (327 U. S. 614) holding that Revised Maximum Price Regulation No. 269 was not broad enough to prevent tie-in sales, unless the extra goods required to be purchased were valueless. The regulation *sub judice* in the *Kraus* case did not expressly forbid tying agreements. The mere circumstance that the purchaser did not want the extra articles which he was required to buy if he were to be allowed to purchase the other articles that he did desire, was held in the *Kraus* case to be insufficient to bring the transaction under the condemnation of that regulation. The United States Supreme Court said, however (p. 622): '' For purposes of this case we must assume that the Administrator legally could include tying agreements and combination sales involving the sale of valuable secondary commodities at their market value among the prohibited evasion devices.''

Maximum Price Regulation No. 118 of the Office of Price Administration was in force at the time of the transaction in suit, respecting '' Cotton Products '', reading as follows: '' The price limitations set forth in this Maximum Price Regulation No. 118 shall not be evaded, whether by direct or indirect methods, in connection with an offer, solicitation, agreement, sale, delivery, purchase or receipt of or relating to cotton products, alone or in conjunction with any other commodity or by way of commission, service, transportation, or other charge, or discount, premium or other privilege, *or by tying-agreement* or other trade understanding, or otherwise.'' (Italics supplied.) (7 Fed. Reg. 3038, 3040.) A similar regulation was construed by the Tenth Circuit Court of Appeals in *Anchor Liquor Co.* v. *United States* (158 F. 2d 221) holding that a tie-in sale or combination agreement was prohibited, if the purchaser did not want to buy the extra commodity, notwithstanding that it was worth the ceiling price at which it was sold. *Sullivan* v. *Porter* (160 F. 2d 648) held that no violation of a similar regulation was involved if the purchaser desired both commodities, even though the seller refused to sell the one without the other.

The exchange contract in the case at bar did not require plaintiff to buy any commodity other than the textile which it wanted to manufacture into bathrobes, but plaintiff was

required by a dependent promise to acquire and sell at a loss the Brazilian material to be bought from defendant. Although the O. P. A. regulations did not cover plaintiff's purchase of these goods in Rio de Janeiro, the cost price there was greater than the O. P. A. ceiling in the United States. The testimony shows that plaintiff would have lost about $50,000 upon its sale to Aleo of the undelivered merchandise. There is evidence that this loss would have been more than offset by the profit which plaintiff would have derived from selling the bathrobes which it was not able to manufacture, but the important point is that plaintiff would not voluntarily have reduced its profit by taking this loss, by purchasing material from defendant in Brazil which it did not want, if Aleo had been willing to sell the full volume of domestic cotton piecegoods without tying in the other transaction. Plaintiff thus became an unwilling seller to Aleo, if not an unwilling buyer of unwanted commodities. In consequence of the transaction Aleo would have been able to increase the volume of its business by supplying customers with the Brazilian material, without having to sustain the loss which would have resulted if it had bought the imported material at Brazilian prices. Plaintiff was able to obtain a contract to buy the domestic piecegoods only by assuming this loss. Although the test of legality is not whether plaintiff would have suffered a loss in selling the Brazilian goods, the fact that it was assumed by plaintiff is enough to demonstrate that plaintiff undertook that part of the transaction under compulsion by Aleo and against its own will.

Being either an unwilling buyer or an unwilling seller of an extra commodity, in order to procure the commodity desired, would appear to make the transaction a tying agreement within the meaning of the regulation.

That is sufficient to classify the exchange contract with Aleo as a tying agreement within the meaning of the regulation by the Federal Price Administrator.

The judgment and order appealed from should be affirmed, with costs.

PECK, P. J., DORE and CALLAHAN, JJ., concur; SHIENTAG, J., dissents and votes to reverse in the following memorandum: I dissent and vote to reverse and grant a new trial. The complaint was improperly dismissed. The agreement which plaintiff had made with Aleo Mills, Inc., was not illegal.

Judgment and order affirmed, with costs.