The People of Puerto Rico, Plaintiff and Appellee, *v.*
Antonio Arce Cortés, Defendant and Appellant.

No. 11733.   Argued April 10, 1947.—Decided April 23, 1947.

234

*A. Quirós Méndez* for appellant. *Luis Negrón Fernández, Acting Attorney General* and *Joaquín Correa Suárez, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Marrero delivered the opinion of the Court.

On August 8, 1946, the District Attorney of Aguadilla filed an information against Antonio Arce Cortés, charging that the defendant, on said date and in the city of Aguadilla, did unlawfully, wilfully, maliciously, and aware that he was violating Act No. 228 of May 12, 1942, as amended by Act No. 493 of April 29, 1946, in connection with Administrative Order No. 8 of September 8, 1942, issued by the General Supplies Administrator, refuse to sell to Pedro Nieves Román 48 bags of rice, notwithstanding the fact that he had a sufficient quantity of rice in stock, unless the buyer purchased from him other goods, such as corn, potatoes, onions, etc., at a cost of $2,000, which the said Pedro Nieves Román neither needed nor wanted.

The case having been set, it was tried on the 19th of the same month, and the district court, after hearing the evidence, found the defendant guilty of the offense charged against him and sentenced him to serve two years in jail and to pay a fine of $5,000, plus costs.

Feeling aggrieved by that judgment, the defendant appealed in due time to this Court, and in support of his appeal he has assigned the following errors:

"FIRST: The Court erred in denying the motion for a continuance presented by the defense.

"SECOND: The Court erred in overruling the demurrer wherein it was alleged that the information did not state facts sufficient to constitute a cause of action against the defendant-appellant.

"THIRD: The Court erred in overruling the demurrer for want of jurisdiction of the Court."

█ Since we· regard the question raised by the second assignment as the most important one in the case, we will discuss it first. In his argument under that assignment the appellant maintains that there is involved herein an improper delegation of powers "and that it is incumbent on the Legislature and on the Honorable Judges to declare what constitutes a crime"; and he further argues that, under the Act, the General Supplies Administrator is not empowered to define a crime, much less impose a penalty.

Undoubtedly, there are certain powers which the Legislature may delegate to a particular officer or administrative board. However, it is natural that the person or entity to whom that authority is delegated may issue only such rules and regulations as are within the language, purpose, and spirit of the statute granting the powers. It is impossible for the lawmaker to foresee or anticipate every situation which may arise upon the enactment of a statute, and the power to issue rules and regulations is delegated in order that the law may be implemented and rendered more practicable. See 42 Am. Jur. 353, § 49 and the monograph published in 79 L. ed. 474, 489.

In the case at bar, the Act clearly and expressly authorizes the General Supplies Administrator to adopt rules and regulations. Thus, Act No. 228 of May 12, 1942 (Sess. Laws, p. 1268), as amended by Act No. 493 of April 29, 1946 (Sess. Laws, p. 1474), contains the following provisions:

"Section 2.—(c) The Administrator may, from time to time, issue such regulations and orders as he may deem necessary to enforce the provisions of this Act.

"Section 3.—(a) Whenever in the judgment of the Administrator the price or prices of staple commodities . . . have risen or threaten to rise in a manner inconsistent with the purposes of this Act, the said Administrator may, by regulations or orders, establish such maximum prices or maximum profits as in his judgment are generally fair and equitable and will effectuate the purposes of this Act; . . . The term 'regulation or order', as here used, means a regulation or order of general application and effect. . . .

"(b) Any regulation or order issued under this Section may be established in such form and manner as to contain such classifications and differentiations, and provide for such adjustments or reasonable exceptions, as may be necessary and proper in the judgment of the Administrator to effectuate the purposes of this Act. . . .

"(c) Whenever in the judgment of the Administrator such action should be necessary and proper in order to effectuate the purposes of this Act, he may regulate by regulation or order, and he may prohibit, such speculative or manipulative practices, . . .

"  *          *          *          *          *          *          *

"(e) The orders, rules and regulations prescribed hereunder may contain all such provisions as the Administrator may deem necessary in order to prevent the evasion thereof.

Section 10.—(a) The sale or delivery by any person of any staple commodity, . . . in the course of business . . . in violation of any regulation or order issued hereunder, . . . shall be illegal, . . . "

So, then, there is no doubt that, under Act No. 228 of 1942, as amended in 1946, the General Supplies Administrator is empowered to issue rules and regulations which, of course, must conform to and fall within the spirit, language, and purpose of the Act.

██ Pursuant to the power conferred on him, the General Supplies Administrator issued on September 8, 1942, Administrative Order No. 8, which in its pertinent part reads thus:

"The General Supplies Administrator of Puerto Rico hereby determines that a number of speculative and manipulative practices exist in our insular commerce which, in his judgment, are equivalent or lead to unjustifiable price increases and which are inconsistent with the purposes of Act No. 228 of May 12, 1942. In accordance with

such determination and in virtue of the power conferred upon him by § 3, subdivision (d), of the aforesaid Act, the Administrator issues the following ORDER:

" *           *           *           *           *           *           *

"6. *To refuse to sell any goods he may have in stock unless other goods are purchased from him which the buyer* does not want or need." (Italics ours.)

Said Administrative Order contains nine subdivisions and any violation thereof, by express provision of the order, is made punishable by a fine not to exceed $5,000 and imprisonment of from 3 months to 2 years in jail.

It has been repeatedly held that a regulation issued under a delegated power by an administrative body can not be in conflict with the act granting such power. Likewise it has been decided that rules or regulations can not create offenses for acts or omissions not made punishable by the statute under which such rules or regulations are issued. See *Ex parte Irizarry,* 66 P.R.R. 634, 637, and cases cited therein; 42 Am. Jur., p. 355, § 50, and the above-cited monograph published in 79 L. ed 474, 491. See also *United States* v. *Eaton,* 144 U. S. 677, which is undoubtedly a leading case on the subject, and the decisions in *United States* v. *Grimaud,* 220 U. S. 506, and *Singer* v. *United States,* 323 U. S. 338, wherein the principle announced in the former is distinguished.

It will be noted that by subdivision 6 of the Administrative Order No. 8, the Administrator seeks to prohibit what our people have quite aptly and graphically characterized as "tie-in sales" (*"ventas en convoy"*).

Likewise it will be noted that under §§ 2(c) and 3(a), (b), (c), and (e) of Act No. 228, *supra,* as amended, the Administrator is empowered not only to issue such regulations and orders as he may deem necessary to enforce the Act, but also to prohibit speculative or manipulative practices, and to make such provisions as he may deem necessary in order to prevent the evasion of the Act. In stating in his Administrative Order No. 8 the prohibition against the refusal by

a merchant to sell goods kept by the latter in stock unless other goods are purchased which the buyer does not want or need, the Administrator did nothing else than implement Act No. 228, as amended, in order to carry out the aims and purposes of the statute. Unless the Administrator were allowed to issue a regulation such as the one adopted by him prohibiting transactions like the one involved herein, it would be easy for unscrupulous merchants to evade the maximum prices fixed.

It is true that in the Administrative Order already mentioned the Administrator fixes a penalty; but the latter is nothing else than a repetition of the penalty established by § 13(b) of the Act. Consequently, the penalty so fixed may be treated as surplusage or as an innocuous repetition.

As we have already stated, a public offense can not be created by a regulation. But where the statute empowers an administrative officer to issue regulations and at the same time it punishes any violation of its own provisions and of such regulations (§ 10(a) supra), it would be difficult to assert that an information in a criminal prosecution under the Act and regulations, does not state a public offense.

In case No. 11818, *People* v. *Rivera,* decided on April 14th of the present year, this Court had before it a question which, although not identical with the one involved herein, at least bears a certain similarity thereto. In that case Rivera Irizarry was charged with having sold a one-half pound of codfish for 15 cents, in violation of Administrative Order No. 68. Act No. 228, *supra,* does not fix a maximum price for any article, but authorizes the Administrator to fix maximum prices. In deciding the question involved therein, this Court said:

". . . The Legislature created the offense. The Administrator, whether we call him an official or a private citizen, took action which he was authorized to take pursuant to Act No. 228. We therefore hold that violation of the Order was a crime . . .

"We are unable to agree with the contention of the defendant that the crime charged herein was not defined by law. Section 10(a)

makes it illegal to sell any article in violation of a regulation or order issued pursuant to Act No. 288. . . . Moreover, § 13(b) and the provisions of the Administrative Order fixing penalties for violation thereof are identical. . . .

"The defendant next contends that although § 2(c) authorizes the Administrator to issue regulations, the Act does not provide that such regulations shall have the force of law. This is a frivolous contention. Section 10(a) specifically makes it illegal to sell any article in violation of an order or regulation of the Administrator."

We have said that the *Rivera* case bears some similarity to the instant case because although the former involved a sale at an excessive price and not a "tie-in sale," the legal questions raised therein are nearly identical with most of those discussed in the latter. Consequently, what we have just quoted might be asserted herein with equal force.

The case of *Kraus & Bros, Inc.* v. *United States,* 327 U. S. 614, seems to be almost identical with the one at bar. There the information charged that the accused "unlawfully, wilfully, and knowingly *evaded* the provisions of Regulation No. 269, § 1429.5 by demanding, compelling, and requiring the retail buyer to purchase chicken feet or chicken skins at a specified price as a condition of the sale of poultry."

Section 2(a) of the Emergency Price Control Act of 1942, authorizes the Price Administrator "to establish by regulation or order such maximum prices 'as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act'" and § 2(g) further provides that the regulations and orders issued under the Act may contain such provisions as the Administrator deems necessary to prevent the circumvention or evasion thereof. The Administrator, pursuant to the authorization granted to him, issued Regulation No. 269 which provides that the price limitations set forth therein shall not be evaded whether by direct or indirect methods. In deciding the case the United States Supreme Court, speaking through Mr. Justice Murphy, said that "The elements of evasive conduct should be so clearly

expressed by the Administrator that the ordinary person can know in advance how to avoid an unlawful course of action'' (p. 621), and that ''The prohibited conduct must, for criminal purposes, be set forth with clarity in the regulations and orders which he (the Administrator) is authorized by Congress to promulgate under the Act.'' (P. 622.) It was further declared that in the said Regulation no specific mention was made of tying agreements or combination sales, but for purposes of the case it must be assumed that the Administrator legally could include tying agreements and combination sales (*ventas en convoy*) involving the sale of valuable secondary commodities at their market value among the prohibited evasive devices. In view of the vague language of the Regulation, the Court concluded that the same prohibited only those tying agreements or combination sales where the tied-in commodity was worthless or was sold at an artificial price, and ordered that the case be remanded for a new trial.

However, in the said case of *Kraus & Bros.* v. *United States* it is stated, at p. 625, that the meat and clothing regulations contain provisions prohibiting that a sale of meat or clothing be conditioned upon the purchaser being required to purchase some other commodity.

In *United States* v. *Armour & Co. of Delaware,* 50 F. Supp. 347, there was involved a question similar to the one presented by the instant case, and it was held that an indictment charging violation of a regulation similar to Administrative Order No. 8 herein was sufficient. See also *United States* v. *George F. Fish, Inc.,* 154 F. (2d) 798, and *Coffin-Redington Co.* v. *Porter,* 156 F. (2d) 113.

In connection with Act No. 6 of November 17, 1941 (Spec. Sess. Laws, p. 14), whereby there was created a commission which was empowered to determine the selling prices of staple commodities, this Court has decided several cases and in all of them it has reached the conclusion that a sale made at a price in excess of the one fixed by the regulations of the commission thus created constitutes a public offense. See *People*

v. *Díaz*, 62 P.R.R. 129; *People* v. *Ortiz*, 62 P.R.R. 284; *People* v. *Martínez*, 62 P.R.R. 706.

The case of *Ex parte Irizarry*, 66 P.R.R. 672, is different from the instant case. There Irizarry was prosecuted for refusing to sell, and upon being sentenced by the lower court he applied to us for a writ of habeas corpus. We held that under Act No. 228 of 1942, a refusal to sell did not constitute a public offense. However, there the Act expressly provided that "Nothing in this Act shall be construed to require any person to sell any staple commodity."

Summing up, we reach the following conclusions:

(1) That the Administrator was fully empowered to adopt the rules and regulations which he issued;

(2) That Administrative Order No. 8 issued by him is within the purpose and spirit of Act No. 228, as amended;

(3) That although the said Order No. 8 fixes a penalty, the same is nothing else than the penalty established by § 13(b) of the Act, and does not involve a distinct offense other than the one provided by the Act, and

(4) That the information, as worded, charges a public offense.

Having thus disposed of the second error assigned, we now turn to the first and third assignments. The first of these, it will be recalled, refers to the refusal of the court to grant a motion for a continuance filed by the defense. The granting of a continuance always rests in the sound discretion of the trial court, and this Court will not disturb the ruling of the lower court unless an abuse of discretion is shown. *Amy* v. *District Court*, 59 P.R.R. 658. The defendant maintains that the district court should have acceded to his request, since he was taking steps to have the General Supplies Administrator decide the case administratively. That contention is not correct. The first *proviso* of § 13(b) merely provides "That any action or proceeding so brought shall be set aside after payment of costs *when the persons prosecuted,*

*or their legal representatives, show that they have paid the administrative fine fixed by the General Supplies Administrator . . ."* (Italics ours.)  That Section does not at all say that a court which has before it a case involving a violation of Act No. 228 must stay the proceedings therein when the defendant has merely taken steps for a settlement of the matter by the Administrator.  That contention also lacks merit.

[9] The third assignment refers to the lack of jurisdiction of the District Court of Aguadilla to take cognizance of the cause.  On this question we will say that, although in *Ex parte Irizarry, supra,* we held (p. 672) "that when a person is imprisoned for the doing of certain acts which do not constitute an offense under the law the court lacks jurisdiction over such a prosecution and the defendant may be discharged in a habeas corpus proceeding . . ," this is so where no public offense is involved, but it is otherwise where it is held that the information charges an offense.  Moreover, it was incumbent on the District Court of Aguadilla to take cognizance of the prosecution, inasmuch as the Act (§ 13(b)) definitely provides that "The District Court of the place wherein the act or transaction constituting the offense was executed, shall have original jurisdiction over said offense, and the case shall be tried by a court without a jury . . ." Since the offense was committed in the city of Aguadilla, there is no doubt that the district court of that district was the proper court to take cognizance of the same.

However, in disposing of this case in the manner above indicated, we think that there is nothing in the information or in the evidence to justify the severe penalty imposed. Hence, the judgment will be modified to impose on the defendant a fine of $1,000 and four months' imprisonment in jail, with costs, and as so modified, the judgment will be affirmed.